**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| ALASTAR MCGINNIS, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 25-2138-BAH |
| PLAMONDON ENTERPRISES, INC. | * | |
| d/b/a ROY ROGERS, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Alastar McGinnis ("Plaintiff") brought suit[1] against his former employer,
Plamondon Enterprises, Inc. ("Defendant") alleging violations of Title VII of the Civil Rights Act
("Title VII"), 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C.
§ 12101 et seq., and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann.,
State Government Article ("SG") § 20-601 et seq. ECF 5 (amended complaint). Pending before
the Court is Defendant's motion to dismiss (the "Motion"). ECF 8. Plaintiff filed an opposition.
ECF 10. The Court has reviewed all relevant filings and finds that no hearing is necessary. *See*
Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Defendant's Motion is
**GRANTED in part** and **DENIED in part**.

---

[1] Plaintiff filed an original complaint on July 2, 2024. ECF 1. An amended complaint, ECF 5,
was timely filed after Defendant filed a motion to dismiss Plaintiff's initial complaint. *See* ECF
4. "[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect."
*Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (quoting *Crysen/Montenay Energy
Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)). Accordingly, Defendant's motion to
dismiss the original complaint was denied as moot. *See* ECF 11.

## I.    **BACKGROUND**

The following facts are drawn from Plaintiff's amended complaint, which the Court will accept as true and construe in the light most favorable to the plaintiff. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Plaintiff alleges that he was hired by Defendant to work at Roy Rogers in Frederick, Maryland, starting "in or about August 2022." ECF 5, at 5 ¶ 20. Plaintiff was a minor during his employment with Defendant. *Id.* at 2 ¶ 5.  Plaintiff is also diagnosed with "[a]utism and a [s]peech [i]mpairment," *id.* at 3 ¶ 9, and alleges that "Defendant was aware of [his] disability at the time of hire and throughout his employment," *id.* at 6 ¶ 34.

Plaintiff alleges that "[b]eginning in or about February 2023," his "female General Manager" began "repeatedly enter[ing] the men's restroom while Plaintiff was using it, unannounced and without knocking." *Id.* at 7 ¶ 41.  The General Manager also allegedly "stared at Plaintiff from behind while he was urinating, looking him up and down in a manner that Plaintiff experienced as sexually assaultive, humiliating, and wholly inappropriate." *Id.* ¶ 42.  Plaintiff alleges that the General Manager "did not follow female employees into the restroom or stare at them while they used the bathroom." *Id.* at 8 ¶ 47.  Based on the General Manager's conduct, Plaintiff's father "filed a formal complaint of sexual harassment . . . on or about March 10, 2023, on Plaintiff's behalf." *Id.* at 8 ¶ 50.  On that same day, Plaintiff's father advised the District Manager and Human Resources Manager that "since [Plaintiff] is autistic, for him to respond to any criticism or counseling, management would have to speak to him in a calm, clear, professional and polite manner." *Id.* at 9 ¶ 65.  Defendant then "immediately suspended Plaintiff from work pending investigation." *Id.* at 10 ¶ 68.

2

Plaintiff was then "involuntarily transferred . . . to a different Roy Rogers location" "[o]n or about March 20, 2023." *Id.* ¶ 70. After the transfer, Plaintiff was allegedly subjected to "disability-based derogatory comments and disparate treatment," including a manager screaming, "That was stupid!" after Plaintiff made a "minor customer service mistake," *id.* ¶¶ 73–74. In May of 2023, Plaintiff's father "reiterated to [the Human Resources Manager] . . . that for [Plaintiff] to respond to any criticism or counseling, management would have to speak to him in a calm, clear, professional, and polite manner." *Id.* at 11 ¶ 81.

Plaintiff alleges that the circumstances at work began to deteriorate, including that he was targeted with inconsistent enforcement of workplace rules and "was frequently written up for minor or trivial mistakes, unlike his non-disabled coworkers." *Id.* at 12 ¶¶ 90–91. During a meeting with Human Resources on June 9, 2023, Plaintiff raised "that management had failed to address his complaints of retaliation and that the [General Manager at the previous location] had not been disciplined for her repeated restroom intrusions, which made Plaintiff feel sexually assaulted." *Id.* at 14 ¶¶ 106–107. On June 12, 2023, Plaintiff was terminated. *Id.* at 15 ¶ 109.

Plaintiff brings the following claims: sex discrimination and sexual harassment in violation of Title VII and MFEPA (Counts I and II); gender-based retaliation in violation of Title VII and MFEPA (Counts III and IV); disability discrimination in violation of the ADA and MFEPA (Counts V and VI); disability-based retaliation in violation of the ADA and MFEPA (Counts VII and VIII); and hostile work environment harassment in violation of the ADA and MFEPA (Counts IX and X).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal

3

conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.  ANALYSIS

Defendant moves to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6). *See* ECF 8, at 1. Plaintiff argues that the Rule 12(b)(6) standard "establishes a relatively low threshold that strongly favors the non-moving party." ECF 10, at 3. While accurate that the Court must view the amended complaint as true and in the light most favorable to Plaintiff, Plaintiff must nonetheless state a plausible claim for relief.

Below, the Court first provides a summary of MFEPA's relationship to federal anti-discrimination statutes followed by analysis of Plaintiff's discrimination, harassment, and retaliation claims in turn.

4

### A.    MFEPA is Analogous to Federal Anti-Discrimination Statutes

MFEPA prohibits discriminatory employment practices based on an individual's protected characteristics, including one's sex or disability. *See* SG § 20-606. Under MFEPA, an employer may not "fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment" because of, relevant here, the individual's sex or disability, SG § 20-606(a)(1); "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee," *id.* (a)(4); or "engage in harassment of an employee," *id.* (a)(5). Similarly, MFEPA prohibits an employer from discriminating or retaliating "against any of its employees" because that individual has either "opposed any practice prohibited by [MFEPA]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [MFEPA]." *Id.* (f).

The Supreme Court of Maryland has recognized that MFEPA is "modeled on federal anti-discrimination legislation." *Doe v. Catholic Relief Servs.*, 300 A.3d 116, 126 (Md. 2023) (quoting *Molesworth v. Brandon*, 672 A.2d 609, 614 (Md. 1996)). Maryland has a well-established "history of consulting federal precedent in the equal employment area." *Taylor v. Giant of Md., LLC*, 33 A.3d 445, 459 (Md. 2011) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)). For instance, Maryland follows the *McDonnell Douglas* burden-shifting framework applicable to federal anti-discrimination laws when resolving a claim of retaliation and employment discrimination. *See Lockheed Martin Corp. v. Balderrama*, 134 A.3d 398, 414 (Md. App. 2016); *Barreto v. SGT, Inc.*, 826 F. App'x 267, 271 (4th Cir. 2020) ("Under Title VII and the MFEPA, courts apply the same *McDonnell Douglas* burden-shifting framework to claims of retaliation that they apply to discrimination claims."). As such, the Court's analysis under MFEPA and the respective federal discrimination statutes invoked here—Title VII and the ADA—is parallel,

5

unless otherwise indicated. *See Watrous v. AIRtec, Inc.*, Civ. No. TJS-24-2076, 2025 WL 2494324, at *10 (D. Md. Aug. 28, 2025) (noting that "[b]ecause the MFEPA is 'modeled on federal anti-discrimination legislation,' Maryland courts largely apply federal precedent to employment discrimination claims brought under the MFEPA" except "where the MFEPA materially departs from the language of Title VII" (quoting *Catholic Relief Servs.*, 300 A.3d at 126–27)).

**B.    Discrimination**

### 1. Title VII and MFEPA (Counts I and II)

Plaintiff alleges that the General Manager's bathroom intrusions constitute sex discrimination in violation of Title VII. ECF 5, at 17 ¶ 128. Plaintiff alleges disparate treatment because the General Manager "did not engage in similar conduct towards female employees." *Id.* at 7 ¶ 46.

Under Title VII an employer may not, in relevant part, "discriminate against any individual with respect to [the] . . . terms, conditions, or privileges of [his] employment, because of" an individual's protected characteristics, including sex. 42 U.S.C. § 2000e-2(a)(1); *see Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018). A plaintiff may prove a claim under Title VII through either "(1) direct or circumstantial evidence that discrimination motivated the employer's adverse employment decision; or (2) the *McDonnell Douglas* 'pretext framework' that requires a plaintiff to show that 'the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for [discrimination].'" *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); *McDonnell Douglas v. Green*, 411 U.S. 792, 802–04 (1973) (establishing a three-step test where, first, a plaintiff must establish a "prima facie case" of discrimination; second, "[t]he burden then [] shift[s] to the employer to articulate some legitimate,

6

nondiscriminatory reason" for the alleged adverse action; and third, the plaintiff may present evidence to show that the employer's reasoning was mere pretext for discrimination).

However, as the Supreme Court clarified in *Swierkiewicz v. Sorema, N.A.*, the *McDonnell Douglas* burden shifting framework is an "evidentiary standard, not a pleading standard." 534 U.S. 506, 510 (2002). However, *McDonnell Douglas* remains useful as a framework for assessing whether a complaint accords with the standards articulated in *Twombly* and *Iqbal*. *See Woods v. City of Greensboro*, 855 F.3d 639, 646–48 (4th Cir. 2017). In other words, though a plaintiff need not establish a prima facie case as required by *McDonnell Douglas* at the motion to dismiss stage, "reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim." *Allgaier v. Microbiologics, Inc.*, Civ. No. ELH-22-01900, 2023 WL 2837336, at *8 (D. Md. Apr. 7, 2023).

In instances where, as here, a plaintiff does not offer direct evidence of discrimination, the elements of a prima facie case of discrimination alleging disparate treatment "under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)), *aff'd sub nom. Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30 (2012). Defendant argues that Plaintiff has failed to plead the second and fourth elements. ECF 8, at 4.

With respect to the second element, Plaintiff alleges that he had been doing his job in a satisfactory manner when the General Manager started following him into the bathroom in February of 2023. *See* ECF 5, at 6 ¶ 36 ("From the time the Plaintiff began working for Defendant until about March 9, 2023, the Plaintiff was doing his job in a satisfactory manner."). Plaintiff

7

rests his assertion of satisfactory job performance on the allegation that "Defendant has no written record of any contemporaneous event demonstrating [Plaintiff had] any performance issue," *id.*, and "no record of any discipline, counseling or warning of any kind issued to the Plaintiff," *id.* at 7 ¶ 40. Perhaps in an attempt to articulate a legitimate, non-discriminatory reason for the General Manager's actions pursuant to the second step of the *McDonnell Douglas* test, Defendant contends that "the General Manager was only looking for the Plaintiff in the restroom because Plaintiff was known to hide in the restroom, instead of remaining at his workstation," which Defendant provides is the "sole reason" the General Manager entered the bathroom. ECF 8, at 3–4. It bears repeating that at the pleading stage, the Court must accept Plaintiff's allegations in the amended complaint as true, and the *McDonnell Douglas* burden-shifting test does not apply. As such, the Court does not consider Defendant's justification for the General Manager's bathroom intrusions at this stage.

Courts evaluate an employee's alleged satisfactory job performance from the perspective of the employer, rather than the employee. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980). "This requires a plaintiff to provide 'detailed factual information regarding performance.'" *Burns v. WSSC Water*, Civ. No. GLS-21-2509, 2022 WL 3043412, at *5 (D. Md. Aug. 2, 2022) (quoting *Bynum v. Martin*, Civ. No. GJH-16-2067, 2016 WL 7468050, at *5 (D. Md. Dec. 27, 2016)). However, "[e]mployees are not required to show that they are 'perfect or model' employees." *Quiroz v. Empirian Vill. of Maryland, LLC*, Civ. No. AAQ-21-02638, 2022 WL 1321594, at *2 (D. Md. May 3, 2022) (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019)). While a conclusory allegation of satisfactory job performance is generally insufficient to meet this burden, this Court has concluded that a plaintiff sufficiently pleads satisfactory job performance where he alleges he was never informed "that his job was in jeopardy prior to" an adverse employment action. *Id.* Here, Plaintiff pleads that he had "no record of discipline,

counseling or warning of any kind" prior to the General Manager's bathroom intrusions. ECF 5, at 7 ¶ 40. Had his job performance been less than satisfactory in the six-month period prior to the bathroom intrusions, it is reasonable to infer that his employer would have given him some kind of warning or discipline. Drawing all reasonable inferences in Plaintiff's favor, he has adequately plead that his job performance was satisfactory at this stage. *See Parker v. Children's Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at *10 (D. Md. Dec. 9, 2021) (satisfactory job performance sufficiently alleged where the plaintiff was "abruptly fired" without identification of "particular deficiencies" in job performance); *see also Tafazolli v. Nuclear Regulatory Commission*, Civ. No. PWG-19-321 & PWG-19-1638, 2020 WL 7027456, at *12 (D. Md. Nov. 30, 2020) (finding that Plaintiff had sufficiently pled satisfactory performance where facts alleged were brief).

Defendant also argues that Plaintiff fails to plead the fourth element because he does not "demonstrate that the [proposed] comparator is similarly situated in all relevant respects." ECF 8, at 3 (quoting *Williams-Johnson v. Paris Foods Corp.*, Civ. No. RDB-24-1197, 2025 WL 775513, at *5 (D. Md. Mar. 10, 2025)). Defendant rests its assertion on its proffered legitimate, non-discriminatory reason for the bathroom intrusions, arguing that Plaintiff provides no facts "to suggest that female employees were hiding in a restroom to avoid their work duties or that management needed to chase female employees back to their workstations." *Id.* at 4. But the Court may not consider Defendant's counterargument at this stage, and Defendant offers no other argument in support of its assertion that the Court should do so.

In general, where "'a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination,' the plaintiff must demonstrate that the comparator is similarly situated in all relevant respects." *Williams-Johnson*,

9

2025 WL 775513, at *5 (quoting *Swaso*, 698 Fed. App'x at 748). This includes alleging "that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). "Although a full analysis of whether comparators are similarly situated does not necessarily occur at the motion-to-dismiss stage, a plaintiff must still plead sufficient facts to justify an inference that the employer treated the plaintiff differently from the way it treated others under 'arguably similar circumstances.'" *Tittle v. Petro*, Civ. No. TDC-24-3061, 2025 WL 1920936, at *6 (D. Md. July 11, 2025) (quoting *Woods*, 855 F.3d at 651). However, "no single comparator" must "perfectly align[] with every incident of [a plaintiff's] conduct" as "the analysis does not require a perfect one on one fit." *Johnson v. Baltimore City, Maryland*, No. 25-1124, ---F.4th ----, 2026 WL 31776, at *6 (4th Cir. Jan. 6, 2026) (alterations added) (citing *Haynes*, 922 F.3d at 223). "Instead, the analysis focuses on the 'similarity between [the] comparators' and their conduct such that a jury could reach an inference of discrimination, so long as the comparison is 'meaningful.'" *Id.* (alteration in *Johnson*) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008)).

Plaintiff asserts that the General Manager "did not follow female employees into the restroom or stare at them while they used the bathroom." ECF 5, at 17 ¶ 121. Whether the female employees were similarly situated in all relevant respects, including whether they had "comparable job duties, job performance, [or] qualifications," *Tittle*, 2025 WL 1920936, at *7, has little bearing on the discrimination that Plaintiff alleges he experienced—an interference with his ability to use the bathroom privately while at work. *See* ECF 10, at 12, n.2 (alleging that the bathroom

10

"intrusions affect[ed] a term of [Plaintiff's] employment: the ability to use the bathroom undisturbed from privacy invasions"). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination." *Swaso*, 698 F. App'x at 748 (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)). Presumably all employees were permitted to use the bathroom in Plaintiff's workplace, thus, the comparator inquiry depends primarily on the variable that Plaintiff has alleged—that female employees were not intruded on in the bathroom and thus treated differently under "arguably similar circumstances." *Woods*, 855 F.3d at 651. As such, the nature of the alleged act, combined with Plaintiff's assertion that the General Manager did not intrude on female employees in the bathroom is sufficient to support a reasonable inference of sex discrimination at this stage and the Court will not dismiss these counts.

### 2. ADA and MFEPA (Counts V and VI)

Plaintiff alleges that Defendant denied him reasonable accommodations in violation of the ADA. ECF 5, at 21 at ¶ 159. The ADA prohibits employers from discriminating against otherwise "qualified individual[s] on the basis of disability." 42 U.S.C. § 12112(a)–(b). Under the ADA, a "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Equal Emp. Opportunity Comm'n v. Manufacturers & Traders Tr. Co.*, 429 F. Supp. 3d 89, 102 (D. Md. 2019). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as "the operation of a major bodily function." *Id.* § 12102(2). A "qualified individual" is one who, "with or without reasonable accommodation, can

11

perform the essential functions of the employment position that [the] individual holds or desires." *Id.* § 12111(8). Among the forms of discrimination prohibited by the statute are (1) imposing an adverse action upon an employee due to their disability; (2) retaliating against an employee for engaging in protected activities related to disability discrimination; and (3) creating a hostile work environment. *See Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 653 (4th Cir. 2023) (recognizing each type of claim under the ADA).

"One form of discrimination prohibited by the ADA is a failure to make a reasonable accommodation." *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 322 (4th Cir. 2011). "A reasonable accommodation is one that (1) 'enables [a qualified] individual with a disability . . . to perform the essential functions of [a] position,' . . . or (2) 'enable[s] [an] employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by . . . other similarly situated employees without disabilities.'" *Hamel v. Bd. of Educ. of Harford Cnty.*, Civ. No. JKB-16-2876, 2018 WL 1453335, at *10 (D. Md. Mar. 23, 2018) (quoting 29 C.F.R. § 1630.2(o)(1)(ii)–(iii)). The elements of a failure to accommodate claim are: "(1) the employee was an individual with a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, the employee could perform the essential functions of the position; and (4) the employer refused to make such accommodations." *Manufacturers & Traders Tr. Co.*, 429 F. Supp. 3d at 103 (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Defendant argues that Plaintiff "has failed to establish that he qualifies as an individual with a disability under the ADA." ECF 8, at 9, 15. The Court disagrees. "The ADA's definition is intended to be broad," *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015), and "[t]he primary object of attention in cases brought under the ADA should be whether covered

entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability," 29 C.F.R. § 1630.1(c)(4). "[T]he question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." *Chisholm v. Mountaire Farms of N. Carolina Corp.*, 629 F. Supp. 3d 368, 375 (M.D.N.C. 2022) (citing ADA Amendments Act of 2008, Pub. L. No. 110–325, § 2(b)(5), 122 Stat. 3553, 3554 (2008)). Further, the regulations set forth that autism substantially limits a major life activity. *See* 29 C.F.R. § 1630.2 (listing autism as an impairment that presumptively substantially limits a major life activity). Plaintiff is diagnosed with autism and a speech impediment, ECF 5, at 20 ¶ 153–154, and alleges that he required reasonable accommodations from his employer for those conditions, *id.* at 5 ¶ 4. The Court concludes that Plaintiff has sufficiently alleged a disability under the ADA.

Defendant does not contest that it had notice of Plaintiff's disability. *See* ECF 5, at 5 ¶¶ 23–24 (describing how Plaintiff's father explained to the District Manager that Plaintiff has autism before he was hired). However, Defendant argues that Plaintiff fails to allege both "how or when he personally requested accommodations" and "that the alleged accommodation requested by Plaintiff would have allowed him to perform the essential functions of his job."[2] ECF 8, at 10.

Defendant cites *Bell v. Medline*, Civ. No. GLR-24-3368, 2025 WL 934275 (D. Md. Mar. 27, 2025) in support of its assertion that Plaintiff was required to "personally request[]

---

[2] Defendant also argues that the accommodations requested by Plaintiff were not reasonable. ECF 8, at 10–11. The Court declines to address this argument because the reasonableness of an accommodation is a question of fact and not to be addressed at the pleading stage. *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 566 (D. Md. 2012) ("Whether an accommodation is reasonable is ultimately a question of fact." (quoting *Pandazides v. Virginia Bd. of Educ.*, 13 F.3d 823, 833 (4th Cir. 1994))). To survive a motion to dismiss, Plaintiff is only required to plausibly allege that with reasonable accommodation, he could perform the essential functions of the position as discussed herein.

accommodations." *Id.* ("Here, as in *Bell*, Plaintiff fails to allege how or when he personally requested accommodation from Roy Rogers for his alleged disability."). However, in *Bell*, this Court did not conclude that a plaintiff is required to *personally request* accommodations in order to prevail on a failure to accommodate claim. Rather, the Court determined that the plaintiff in that case failed to "explain how he requested an accommodation for his alleged disability *at all*." *Bell*, 2025 WL 934275, at *5 (emphasis added). Nevertheless, regardless of whether Plaintiff was required to "personally request" accommodations, his claim fails because he fails to plead that he could perform the essential functions of his job even with reasonable accommodation.

"An employer's obligations under the ADA are triggered for those accommodations necessary for the plaintiff to perform the essential functions of [his] job." *Simmons v. UM Cap. Region Health, Inc.*, Civ. No. PX-21-2074, 2021 WL 4806336, at *4 (D. Md. Oct. 14, 2021) (citing *Fierce v. Burwell*, 101 F. Supp. 3d 543, 550 (D. Md. 2015)). "Essential functions" are "the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1). Plaintiff's duties included "working the cash register, preparing the food bags for customer orders, [and] delivering the orders to the cars in the parking lot." ECF 5, at 6 ¶ 30. Plaintiff asserts that reasonable accommodations for his autism would have included "modifications to work schedules, breaks, or conduct expectations," ECF 5, at 4 ¶ 17, and receiving criticism through "management . . . speak[ing] to him in a calm, clear, professional, and polite manner," *id.* at 9 ¶ 16. He specifically alleges that his father requested the second set of accommodations on his behalf. *Id.* But "an employer's failure to provide an accommodation is only actionable if the accommodation would 'alleviate disability-induced limitations that impact an employee's job-related activities.'" *Simmons*, 2021 WL 4806336, at *4 (quoting *Hamel*, 2018 WL 1453335, at *12). "'A causal relationship' between the disability and the accommodation, therefore, is essential to the success

14

of the claim," *id.* (quoting *Fierce*, 101 F. Supp. 3d at 550), "or, in other words, [that] 'the requested accommodation was *necessary* in order for [him] to perform the essential functions of [his] job,'" *Shivers v. Saul*, Civ. No. JKB-19-2434, 2020 WL 7055503, at *5 (D. Md. Dec. 2, 2020) (quoting *Fierce*, 101 F. Supp. 3d at 550) (emphasis in *Fierce*).

Plaintiff fails to plausibly allege the requisite causal connection because he fails to plead how "management . . . speak[ing] to [Plaintiff] in a calm, clear, professional, and polite manner" would alleviate limitations caused by his disability and allow him to perform the essential functions of his job. In fact, the amended complaint alleges that he requested the accommodation to assist Plaintiff with "respond[ing] to any criticism" and not necessarily related to any essential functions of his position. ECF 5, at 11 ¶ 81; *cf. Simmons*, 2021 WL 4806336, at *4 (dismissing a reasonable accommodation claim where plaintiff's request was made to "ensure that sudden deadlines and unrealistic expectations would stop occurring" (internal quotation marks omitted)). The amended complaint is also devoid of facts connecting Plaintiff's disability to the accommodation request, except for the conclusory statement that the accommodation was needed "since [Plaintiff is] autistic." ECF 5, at 9 ¶ 65. Moreover, Plaintiff fails to allege that the requested accommodation was necessary for Plaintiff to perform any essential functions of his job. Accordingly, these claims must be dismissed.

**C.    Harassment**

1. Title VII and MFEPA (Counts I and II)

Plaintiff alleges harassment in violation of Title VII based on the General Manager entering the men's bathroom, "star[ing] at [him] from behind while he was urinating," and "looking at him up and down." ECF 5, at 16 ¶ 120. He asserts that the General Manager's conduct was "pervasive, occurred on multiple occasions, and created a hostile, intimidating, and distressing work environment for Plaintiff." *Id.* at 8 ¶ 49.

15

Title VII's prohibition on sex discrimination necessarily proscribes harassment on the basis of sex. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986) ("Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex"). Under Title VII, "[t]here are two categories of sexual harassment that are generally recognized: (1) *quid pro quo* harassment, where sexual consideration is demanded in exchange for job benefits; and (2) harassment that creates an offensive or hostile work environment." *Brannam v. Fid. Direct Mortg., LLC*, Civ. No. DKC-18-3306, 2019 WL 2642832, at *5 (D. Md. June 27, 2019) (citing *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983)). Here, Plaintiff alleges the second type—hostile work environment harassment on the basis of sex. *See* ECF 10, at 12 n.2 (explaining that Plaintiff's "gender[-]based claims for a hostile work environment . . . pertain to the bathroom intrusions"). A hostile work environment exists when the workplace is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The elements of a hostile work environment claim are (1) unwelcome conduct; (2) that is based on the plaintiff's protected class; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; (4) which is imputable to the employer. *See Boyer-Liberto*, 786 F.3d at 277.

The Fourth Circuit has set "a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "[T]o plead that the environment is sufficiently severe or pervasive, a plaintiff must allege an objectively hostile workplace environment as well as that it was subjectively perceived by the plaintiff as hostile." *Milo v.*

16

*CyberCore Techs., LLC*, Civ. No. RDB-18-3145, 2019 WL 4447400, at *6 (D. Md. Sept. 17, 2019) (citing *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 178 (4th Cir. 2001)).  The determination of whether an environment is objectively hostile requires consideration of the "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*  "Although the severity or pervasiveness of harassment can be a question of fact, a district court may dismiss a complaint that does not allege facts suggesting that the defendant's conduct was sufficiently severe or pervasive to alter the conditions of plaintiff's employment." *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 352 (E.D. Va. 2023) (collecting cases).

Defendant asserts Plaintiff's claim must fail because "requiring Plaintiff to perform his work duties is neither severe nor pervasive" and that Plaintiff has failed to allege that the bathroom intrusions were "physically threatening," "humiliating," or that they "interfered with his work performance." ECF 8, at 5.

Plaintiff plainly alleges the first and second elements of a Title VII hostile work environment claim—that the conduct of the General Manager was unwelcome, ECF 5, at 16 ¶ 119, and that "gender was a motivating factor" in the conduct, *id.* ¶ 121.  Defendant counters that the intrusions were justified because the General Manager was "checking to see if Plaintiff was using his cell phone." ECF 8, at 6.  As noted, this is a burden-shifting argument that the Court need not consider at this time.  The nature of the General Manager's alleged conduct combined with the allegation that she "did not follow female employees into the restroom or stare at them while they used the bathroom," ECF 5, at 8 ¶ 47, both create a plausible inference that the bathroom intrusions were based on Plaintiff's sex.  *Cf. Westmoreland v. Prince George's Cnty., Md.*, Civ. No. AW-09-

2453, 2011 WL 3880422, at *6 (D. Md. Aug. 31, 2011) (determining that at the pleading stage, plaintiff plausibly alleged that her gender was a but-for cause of harassment where plaintiff alleged that out of thirty-nine mostly male students, she was the only individual implicated in a cheating scandal).

Plaintiff alleges that the General Manager's actions were subjectively hostile. ECF 5, at 7 ¶ 42 (explaining that Plaintiff experienced the conduct as "sexually assaultive, humiliating, and wholly inappropriate"). But whether Plaintiff sufficiently alleged that the conduct was severe and pervasive so as to create an objectively hostile work environment is a more difficult question. *See Harris*, 510 U.S. at 21–22 (explaining that this standard is a "middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury"). As noted, whether a work environment is objectively hostile depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Milo*, 2019 WL 4447400, at *6. Isolated incidents are generally not sufficient to state a hostile work environment claim. *E.E.O.C. v. Rite Aid Corp.*, 750 F. Supp. 2d 564, 572 (D. Md. 2010). However, Plaintiff alleges that the General Manager entered the restroom "repeatedly," ECF 5, at 17 ¶ 125, and "on multiple occasions," *id.* at 8 ¶ 49, and that the conduct continued even after his father made a complaint of harassment, *id.* at 18 ¶ 132. Plaintiff also alleges that the actions "interfered with [his] ability to perform his job duties." *Id.* ¶ 134. Additionally, that a supervisor perpetrated the alleged harassment supports the inference that the conduct was objectively severe or pervasive, because "a supervisor's power and authority invests his or her harassing conduct with a particular threatening character." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 763 (1998). As such, Plaintiff plausibly alleges an objectively hostile work

environment. Finally, that the alleged harasser was Plaintiff's General Manager satisfies the fourth and final element—that the harassment is imputable to the employer. *See Hunt v. Constantine Com. Constr.*, Civ. No. TDC-20-1846, 2023 WL 2744491 (D. Md. Mar. 31, 2023) ("If the harasser is a supervisor, the employer is either strictly or vicariously liable for the supervisor's actions." (citing *Strothers v. City of Laurel*, 895 F.3d 317, 333 (4th Cir. 2018))). Accordingly, Plaintiff's Title VII and MFEPA sex-based hostile work environment claims survive.

### 2. Hostile Work Environment - ADA and MFEPA (Counts IX and X)

Plaintiff alleges that he was subjected to a hostile work environment based on his disability, ECF 5, at 24–26, grounding his claim on Defendant allegedly calling him "stupid," writing him up for minor or trivial mistakes, sending him home early without justification, and subjecting him to inconsistent and targeted enforcement of workplace rules, *id.* at 25 ¶ 190. He also alleges that on one occasion, a coworker "physically assaulted" him by "aggressively forc[ing] a food box out of Plaintiff's hands." *Id.* at 14 ¶ 102.

The requirements for a hostile work environment claim under the ADA mirror those of Title VII. Plaintiff must allege that "(1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Fox*, 247 F.3d at 177.

Plaintiff's claim falters at the fourth step. As noted, Plaintiff must allege a subjectively and objectively hostile work environment. *Milo*, 2019 WL 4447400, at *6. While Plaintiff pleads his subjective perception, the conduct alleged here is far from what may be considered objectively hostile. First, "corrective action to address an employee's professional shortcomings, even if misplaced, does not objectively create a hostile or abusive environment." *Wedderburn v. Bd. of*

19

*Educ. of Baltimore Cnty.*, Civ. No. PX-19-215, 2022 WL 504511, at *13 (D. Md. Feb. 18, 2022). That Plaintiff was written up for what he perceives as minor mistakes or that he was subjected to targeted enforcement of rules does not qualify. Next, although Plaintiff takes issue with allegedly being told something he did was "stupid," name-calling, on its own, rarely gives rise to objectively "severe or pervasive" harassment. *See Peralta v. Roros 940, Inc.*, 72 F. Supp. 3d 385, 395 (E.D.N.Y. 2014) (finding that "name-calling," combined with "undue reprimands, perceived animosity, and unwelcome work assignments" did "not exhibit the severity or pervasiveness of an actionable hostile work environment"); *Murphy v. BeavEx, Inc.*, 544 F. Supp. 2d 139, 150–151 (D. Conn. 2008) (finding that name calling and teasing based on disability were not sufficient to show "severe or pervasive" harassment); *Rodriguez v. Loctite Puerto Rico, Inc.*, 967 F. Supp. 653, 664 (D. P.R. 1997) (same). As to the alleged physical assault that involved aggressively forcing a food box out of Plaintiff's hands, this is not so severe as to constitute a hostile work environment, as only "extremely serious" isolated incidents may amount to discriminatory changes in the "terms and conditions of employment" that form the basis of a hostile work environment claim. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315 (explaining that "conduct that amounts to 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)'" do not rise to the level of objectively severe or pervasive (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998))). Finally, that Plaintiff was sent home early similarly fails to qualify. *See Faulkenberry v. U.S. Dep't of Def.*, Civ. No. JMC-22-1150, 2023 WL 3074639, at *12 (D. Md. Apr. 25, 2023) (holding plaintiff's allegations that she was escorted off work premises by security in view of other employees was not severe enough to establish a hostile work environment claim, noting "far worse is required"). Accordingly, Plaintiff has failed to establish an objectively hostile work environment under the ADA, and his disability-based MFEPA claim fails for the same reasons.

### D.    Retaliation - Title VII, ADA, and MFEPA (Counts III, IV, VII, and VIII)

Plaintiff alleges that Defendant retaliated against him in violation of Title VII, the ADA, and MFEPA, for his participation in protected activities including reporting alleged sexual harassment, requesting accommodations, and reporting disability-based harassment. ECF 5, at 19 ¶ 141, at 23 ¶ 173. Plaintiff claims he was subjected to a number of "adverse employment actions," including but not limited to "immediate suspension, involuntary transfer . . . , and ultimately termination." *Id.* at 23 ¶ 174.

Defendant contends that Plaintiff's retaliation claims must fail because Plaintiff's father engaged in protected activities pursuant to Title VII and the ADA, and "not the Plaintiff himself." ECF 8, at 7; *see also id.* at 13–14.    Plaintiff counters that "his father was acting as his representative," ECF 10, at 10, and "the Supreme Court [has] rejected the argument [that] excludes third-party complaints on behalf of employees" for purposes of a retaliation claim, *id.* at 9 (citing *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011)).    Plaintiff also alleges that he engaged in at least one protected activity with respect to his Title VII claim by raising with management that they "did not take his complaints about sexual harassment seriously." ECF 5, at 19 ¶ 141. However, Defendant asserts that this also fails to qualify as a protected activity because Plaintiff "does not detail when, how, and to whom Plaintiff allegedly reported any alleged complaint." ECF 8, at 7–8.

Title VII, the ADA, and MFEPA prohibit employers from retaliating against employees who oppose discriminatory conduct.  "A prima facie case of retaliation requires [] that: (1) the plaintiff engaged in protected activity, (2) [he] suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse action." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 669 (4th Cir. 2018) (citing *Foster*, 787 F.3d at 250).

21

"The Fourth Circuit has explained that, in the context of a retaliation claim, a protected activity may fall into two categories, opposition and participation." *Parker v. Children's Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at \*19 (D. Md. Dec. 9, 2021) (internal quotation marks omitted) (citing *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)). In other words, "[a]n employer may not retaliate against an employee for participating in an ongoing investigation or proceeding [], nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "[A]n adverse action for purposes of a Title VII [] claim is merely one that causes 'some harm respecting an identifiable term or condition of employment.'" *Barnhill v. Bondi*, 138 F.4th 123, 129 n.6 (4th Cir. 2025) (quoting *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024)). "An employee need not show that the harm was significant, serious, substantial, 'or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355).

A plaintiff may attempt to plead causation in a retaliation claim in two ways: (1) "[a] plaintiff may establish the existence of facts that 'suggest[ ] that the adverse action occurred because of the protected activity,'"; or (2) "a plaintiff may demonstrate that 'the adverse act bears sufficient temporal proximity to the protected activity[.]'" *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 745 (D. Md. 2023) (alterations in *Gaines*) (first quoting *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021); and then quoting *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218 (4th Cir. 2022)). "The existence of relevant facts alone, or together with temporal proximity, may be used to establish a causal connection between the protected activity and the adverse action." *Id.* (alteration omitted) (quoting *Roberts*, 998 F.3d at 123).

22

1. Plaintiff's father's actions constitute protected activity for purposes of Plaintiff's retaliation claims

Plaintiff asserts that *Thompson v. North American Stainless, LP*, 562 U.S. 170 (2011), stands for the proposition that that "the Supreme Court [has] rejected the argument [that] excludes third-party complaints on behalf of employees" for purposes of a retaliation claim. ECF 10, at 9. In *Thompson*, an engaged couple, Thompson and Regalado, were employed by the same company. 562 U.S. at 172. When Regalado filed an EEOC discrimination charge on her own behalf, the company fired Thompson, which Thompson claimed was retaliation for Regalado's undertaking of a protected activity. *Id.* Applying a zone-of-interest test, the Court held that a retaliation suit may lie "by any plaintiff with an interest 'arguably [sought] to be protected by the statute.'" *Id.* at 178. "In light of *Thompson*, [a] plaintiff may rely on the protected activity of another person to establish a Title VII retaliation claim." *Mackall v. Colvin*, Civ. No. ELH-12-1153, 2015 WL 412922, at *24 (D. Md. Jan. 29, 2015) (citing *Thompson*, 562 U.S. at 867). Here, Plaintiff falls into the zone of interest of Title VII and ADA, as he has an interest in being protected from retaliation by his employer.

The Fourth Circuit has also allowed a student to sue for retaliation under the ADA based on actions taken by her mother, who was acting on the student's behalf in dealings with school officials. *See Baird ex. rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). In that case, the Fourth Circuit expressly rejected the argument that a plaintiff could not maintain her claim simply because she did not engage in protected activity on her own behalf. *Id.* at 471 n.10 (rejecting the argument that "Baird failed to present evidence sufficient to raise a genuine issue of material fact with respect to her retaliation claim" because "the forecasted evidence tended to demonstrate that the retaliation against Baird was a result of protected conduct engaged in by her mother, not Baird herself," because "[i]t [wa]s clear that Baird's mother was acting on Baird's behalf in complaining of what

23

she perceived to be conduct by school officials violating the ADA"); *see also E.E.O.C. v. Ohio Edison Co.*, 7 F.3d 541, 547 (6th Cir. 1993) (a protected activity may include circumstances where "an employee, *or his representative*, has opposed any practice made an unlawful employment practice" (emphasis in original)). That Plaintiff was a minor during his employment is also relevant here, as parents "typically have standing to assert the claims of their minor children," *Doe #1 v. Montgomery Cnty. Bd. of Educ.*, Civ. No. PJM-21-0356, 2021 WL 6072813, at *6 (D. Md. Dec. 23, 2021), and so it is reasonable that a parent might raise workplace conduct issues on their minor child's behalf, just as the plaintiff's mother did with the school in *Baird*. Under the specific circumstances here, including Plaintiff's minor status during his employment, his affirmation that his father was acting as his representative, and that he falls into the "zone of interest" of a retaliation claim, the Court concludes that Plaintiff may rely on his father's protected activity undertaken on his behalf to assert the first element of his retaliation claim.

### 2. Plaintiff has sufficiently pled his retaliation claims

Plaintiff has sufficiently pled his Title VII and ADA retaliation claims. It bears noting that Defendant does not address, and therefore does not appear to dispute, that Plaintiff suffered adverse employment action. Defendant also does not address causation in its Motion. Rather, Defendant rests its dismissal arguments on its assertion that Plaintiff did not engage in protected activity. ECF 8, at 7–8, 13–14. This argument fails.

Plaintiff asserts that the protected activities relevant to his retaliation claims include: (1) his father's complaint of sexual harassment on March 10, 2023 regarding the bathroom intrusions, ECF 5, at 19 ¶ 141; (2) Plaintiff's own complaint on June 12, 2023 "that management did not take his complaints about harassment seriously," *id.*; (3) Plaintiff's father's March 10, 2023 request for accommodations for Plaintiff, *id.* at 23 ¶ 173; and (4) Plaintiff's father's May 10, 2023 reiteration of his request for accommodations for Plaintiff, *id.* To the extent that Defendant argues that

24

Plaintiff must plead more specific details about his June 12 complaint, Defendant does not provide any case law in support of that purported requirement.

It is well established, and Defendant does not dispute, that complaints about sexual harassment and requests for accommodations are protected activities under Title VII and the ADA, respectively. *U.S. Equal Emp. Opportunity Comm'n v. Golden Ent., Inc.*, Civ. No. LKG-20-2811, 2023 WL 4134696, at *5 (D. Md. June 22, 2023) ("Complaining about sexual harassment is a protected activity."); *Hamilton v. Prince George's Cnty. Police Dep't*, Civ. No. DKC-17-2300, 2018 WL 1365847, at *7 (D. Md. Mar. 16, 2018) ("A request for accommodation is [a] paradigmatic protected activit[y] for ADA purposes."). Termination is also unquestionably an adverse employment action. *Lamb v. Spencer*, Civ. No. PX-16-2705, 2018 WL 6434512, at *7 (D. Md. Dec. 7, 2018) ("It is undisputed that termination constitutes adverse employment action."). Further, "courts have recognized that a 'transfer' . . . may constitute an adverse employment action." *Thomson v. Belton*, Civ. No. ELH-18-3116, 2018 WL 6173443 (D. Md. Nov. 26, 2018). Thus, the outstanding issue in Plaintiff's retaliation claim is causation.

As noted, one avenue to establish causation is to "demonstrate that 'the adverse act bears sufficient temporal proximity to the protected activity.'" *Gaines*, 657 F. Supp. 3d at 745. Here, Plaintiff alleges that his suspension occurred "immediately" after the March 10, 2023 complaint of sexual harassment and request for accommodations, and his involuntary transfer occurred ten days later. ECF 5, at 10 ¶ 68 ("Following the complaint of sexual harassment, Defendant immediately suspended Plaintiff from work pending investigation[.]"), at ¶ 70 ("On or about March 20, 2023, Defendant involuntary transferred Plaintiff to a different Roy Rogers location[.]"). Plaintiff was then terminated on June 12, 2023, only three days after his second complaint of sexual harassment and one month after the second request for accommodations. *Id.*

at 11 ¶ 81 (in a phone call on May 10, 2023, Plaintiff's father "reiterated" his request for accommodations for Plaintiff), at 14 ¶¶ 106–107 ("On June 9, 2023, Plaintiff was called into a meeting" where "Plaintiff explained that management had failed to address his complaints of retaliation and that [the General Manager] had not been disciplined for her repeated restroom intrusions, which made Plaintiff feel sexually assaulted."). The temporal proximity between the protected acts and adverse actions support an inference of causation here.

"[T]he Fourth Circuit has expressly declined to determine 'how close a temporal connection must [be] for . . . a causal nexus [to exist],' while noting that its 'precedent establishes that several months is sufficiently proximate to satisfy the requirement.'" *Betof v. Suburban Hosp., Inc.*, Civ. No. DKC-11-1452, 2012 WL 2564781, at *11 (D. Md. June 29, 2012) (quoting *Brockman v. Snow*, 217 F. App'x 201, 207 (4th Cir.2007)). However, "[o]ne month is a sufficiently short time to establish a causal link by temporal proximity alone." *Lowman v. Maryland Aviation Admin.*, Civ. No. JKB-18-1146, 2019 WL 133267, at *8 (D. Md. Jan. 8, 2019). Here, the adverse employment actions were all taken within one month or less of each protected activity claimed here, satisfying the requisite causation standard. Plaintiff's retaliation claims thus survive.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF 8, is **GRANTED in part** and **DENIED in part**. The motion is granted as to Plaintiff's disability discrimination (Counts V and VI) and hostile work environment harassment (Counts IX and X) claims under the ADA and MFEPA, which are DISMISSED. Plaintiff's sex discrimination and sexual harassment in violation of Title VII and MFEPA (Counts I and II); gender-based retaliation in violation of Title VII and

26

MFEPA (Counts III and IV); and disability-based retaliation in violation of the ADA and MFEPA (Counts VII and VIII) survive.

A separate implementing order will issue.


Dated: January 28, 2026                                      /s/
                                             Brendan A. Hurson
                                             United States District Judge